1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

19

20

21

DAVID GALLAGHER; SHANNON
CONRADI; S.L.C., a minor; ROBBIE A
BYLSMA; ZACH B. KIRBY; JOANNE
GRIMES; J.A.T., a minor,

Plaintiffs,

v.

THE CITY OF WINLOCK, WASHINGTON;
WINLOCK CHIEF OF POLICE TERRY
WILLIAMS; WINLOCK POLICE OFFICER
BOBBY MUNYAN; WINLOCK POLICE
OFFICER SAM PATRICK; CITY OF
TOLEDO, WASHINGTON; TOLEDO
POLICE OFFICER GERARD THURLOW;
CITY OF NAPAVINE, WASHINGTON;
NAPAVINE POLICE OFFICER JAMES
MCGINTY; NAPAVINE POLICE OFFICER
KEVIN LEE; CITY OF VADER,
WASHINGTON; VADER POLICE OFFICER
JOEL REEDER,

Defendants.

Case No. C05-5478FDB

ORDER GRANTING WINLOCK
AND TOLEDO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

22

**INTRODUCTION**

23

Plaintiffs bring a Complaint for civil rights violations against the above-named cities and

24

individuals for civil rights violations stemming from Plaintiffs' arrests for burglary on January 15,

25

2005.  The individual defendants move for summary judgment based on qualified immunity, and the

26

ORDER - 1

1   cities move for summary judgment, as well, based on a failure of proof as to the elements for

2   municipal liability.

3       The incident giving rise to Plaintiffs' claims occurred in the City of Winlock at a house at 411

4   N.E. First Street that was owned by John Y. Hebert.  Hebert had rented the house to Plaintiffs David

5   Gallagher and Zach Kirby, who both signed the lease along with Gallagher's mother, Sharon Tisler

6   on June 19, 2004.  (Attachment to Plaintiff's Ex. 6, Decl. of Sharon Tisler).  There came a time

7   following David Gallagher's serious injury that he could not live at the house, and Tisler tried to

8   terminate the lease (Tisler Decl., Plaintiff's Ex. 6).  Hebert wrote to her that because she signed a

9   lease for a year, she would have to continue with the payments, but that he would allow her to sub-

10  lease, or if she did not want to do that, he would attempt to re-lease the property and advise her

11  when it was leased.  (*Id.* Ex. C to Ex. 6, Tisler Decl.)  Tisler then paid the rent for January 2005. (*Id.*

12  Ex. D. to Ex. 6, Tisler Decl.)  Zach Kirby kept his belongings there, but only lived in the residence

13  on weekends, and for a short time stayed at his sister's house.  (Ex. 1, Plaintiff's Exhibits, Kirby

14  Decl. )

15      Hebert was successful in finding a new lessee for the house –  Doug Taylor –  to whom he

16  wrote a letter dated January 7, 2005 setting forth terms of a one-year option to purchase the

17  property at 411 N.E. First Street including a specified monthly payment, and upon which Taylor

18  signed his acceptance dated January 13, 2005.  (See Decl. of Doug Taylor, attachment.)

19      Hebert, however, failed to advise Taylor that Tisler had paid the January 2005 rent, and he

20  failed to advise Tisler that he had a new tenant for the house.

21      Thus,  at 11:30 p.m. on January 15, 2005, Doug Taylor reported a suspected burglary of the

22  house on 411 N.E. First Street.  Officer Sam Patrick, Winlock, was the first to arrive at the scene,

23  and hearing several people talking inside the house, he called for backup. The other defendant

24  officers arrived. Taylor showed Gerald Thurlow, Chief of Police, City of Toledo, the January 7, 2005

25  letter from Hebert, and also told him that he had been working to clean up the house for about a

26  ORDER - 2

1   week, had changed the locks and had posted no trespassing signs.  (Taylor Decl.)   While Taylor

2   states in his declaration that he and Hebert agreed that he would start paying rent on February 1,

3   2005, this information does not appear in the January 7, 2005 letter from Hebert to Taylor, which

4   Taylor signed.

5          Officer Patrick called Winlock Chief of Police Terry Williams to notify him of the incident,

6   and the Chief reported that he was aware through previous conversations with Taylor that Taylor

7   had taken possession of the residence at 411 S.E. First St., was fixing it up, and had experienced

8   several break-ins.  (Williams Decl.)  Officer Patrick also talked with a neighbor who stated that the

9   house had been empty for some time and Taylor had been working to clean it up.  (Patrick Decl. Ex.

10  C.)  Chief Thurlow noted freshly broken wood around the front door lock.  (Thurlow Decl.)  Taylor

11  gave the officers permission to enter and search the premises.  (Taylor Decl.)

12         Officer Patrick knocked on the door, announced himself, and a male opened the door and

13  was told to get down, which he did, and Officer Patrick continued through the residence, while Chief

14  Thurlow covered the first male.  (Thurlow Decl.)  Two other males were found through a second

15  door and handcuffed.  (Id.)  Two females in prom-type dresses were not handcuffed.  (Id.)

16  There was a case of beer on the floor, more beer in the refrigerator, and beer on the wood stove

17  where the females had been standing to get warm.  (Id.; Patrick Decl.)  The birth dates of each of the

18  five people found in the residence are listed in Sam Patrick's report, attached to his declaration, and

19  none of the five was 21 years old.  There was a strong odor of alcohol coming from the males.

20         Plaintiff Kirby stated that he had been a tenant in the residence, but that he had been gone for

21  a while, that he had seen the no trespassing signs in the window, that his keys did not work in a lock,

22  but that he, nevertheless gained entry through the back door.  (Kirby Decl. (Ex. 1 to Plaintiff's

23  exhibits.)  Kirby, however, could produce no documentation to show that he had a right to be in the

24  residence.  (Id.)  None of the others in the home produced any verification that they had a right to be

25  in the residence.  (Id.)

26  ORDER - 3

**DISCUSSION**

The Winlock and Toledo defendants argue that they are entitled to qualified immunity because the warrantless entry into the residence and arrests were lawful, as the officers had probable cause, consent and exigent circumstances.

*Saucier v. Katz*, 533 U.S. 194 (2001) established a two-step evaluation to determine the issue of qualified immunity. First, "[B]ased upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?" *Id.* at 201. In order for a right to be "clearly established," its contours must be sufficiently clear that [at the time of the alleged conduct] a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)(internal quotations and citations omitted). If no constitutional right is violated, the analysis ends. *Saucier*, 533 U.S. at 201. If there was a constitutional violation, the second inquiry is "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Id.* at 201-05.

Where law enforcement officers have probable cause and either have consent to enter the home or are presented with exigent circumstances, the Fourth Amendment permits police officers to make a warrantless entry into a person's home. *See Payton v. New York*, 445 U.S. 573, 590 (1980); *United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir. 1978). Probable cause exists when the police know "reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Delgadillo-Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988). Courts look to the totality of the circumstances known to the officers prior to any search conducted incident to the arrest. *United States v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir.), *cert. denied* 497 U.S. 1008 (1990).

Under Washington State law, residential burglary occurs where there is (1) unlawful entry into a dwelling (2) with intent to commit a crime. RCW 9A.52.025. Intent to commit a crime may

1   be inferred from an unlawful entry RCW 9A.52.040.  Residential burglary is a felony. *Id.*

2         Other Washington statutes make it unlawful for any person to supply liquor to any person

3   under the age of twenty-one years of age. RCW 66.44.270(1) and also make it unlawful for any

4   person under the age of twenty-one years of age to possess or consume any liquor.  RCW

5   66.44.270(2).

6         Exigent circumstances are

7         those circumstances that would cause a reasonable person to believe that entry ... was
      necessary to prevent physical harm to the officers or other persons, the destruction of
8      relevant evidence, the escape of the suspect, or some other consequence improperly
      frustrating legitimate law enforcement efforts.
9
*United States v. Lai*, 944 F.2d 1434, 1442 (9th Cir. 1991), *cert denied*, 502 U.S. 1062 (1992).
10
11         The information known to the officers at the time of the entry and arrests was sufficient for a

12   prudent person to believe that the suspects were committing a crime.  The officers received

13   information from Doug Taylor who presented documentation from the owner suggesting that he had

14   a right to possession of the premises, Taylor had made contact with law enforcement regarding

15   previous burglaries, the next door neighbor had observed Taylor fixing up the premises, Taylor had

16   changed the locks and posted no trespassing signs, there was physical evidence around the front door

17   lock indicating a break-in, and none of the people in the house were able to produce proof that they

18   were entitled to be there.  Taylor gave his consent to the entry.  Additionally, containers of alcohol

19   were plainly visible to the officers upon entry to the residence, and there was the odor of alcohol

20   emitting from the males.

21         The search of the premises was also lawful because the officers had consent from Taylor, the

22   alcohol was in plain view of the officers when they entered the residence, and the search was incident

23   to arrest as well.  An occupier or renter can consent to a search without a warrant.  *Stoner v.*

24   *California*, 376 U.S. 483, 489 (1964).  Even if the consenting party does not have actual authority to

25   consent, a warrantless search is justified when the authorities have reasonable grounds to believe that

26   ORDER - 5

1  the consentor has apparent authority to consent.  *United States v. Yarbrough*, 852 F.2d 1522, 1534

2  (9th Cir. 1988).  The plain view doctrine allows for the seizure of evidence in plain view when two

3  criteria are met: (1) the initial intrusion must be lawful, and (2) the incriminatory nature of the

4  evidence must be immediately apparent to the officers.  *U.S. v. Hudson*, 100 F.3d 1409, 1420 (9th

5  Cir. 1996).  The search-incident-to-arrest exception permits law enforcement officers to conduct a

6  warrantless search of a person who is arrested, and of his surrounding area, when the search is

7  incident to the arrest.  *Chimel v. California*, 395 U.S. 752, 762-63 (1969).  A warrantless search of a

8  house incident to arrest is lawful when the arrest takes place inside a house.  *Vale v. Louisiana*, 399

9  U.S. 30, 33-34 (1970).  The officers in this case are entitled to qualified immunity with respect to the

10  premises search because of all the circumstances set forth above and they could reasonably have

11  believed that their conduct in searching the premises was lawful, or if they were mistaken, they

12  reasonably, but mistakenly, believed that their conduct was constitutional.

13        Plaintiffs oppose the Winlock and Toledo Defendants' motion for summary judgment based

14  on qualified immunity arguing they require discovery, that the motion should be denied because

15  Defendants did not provide page and line cites to their supporting evidence.  These objections are

16  without merit, as the qualified immunity determination must be made without Defendants being

17  subjected to discovery.  *Harlow v. Fitzgerald*, 457 U.S.  800, 818 (1982) held that until the threshold

18  issue of immunity is resolved, discovery should not proceed.  While as a general matter it is helpful

19  and necessary with voluminous supporting documentation to provide page and line cites, that

20  situation did not obtain in this case, where locating information was not a problem with the

21  references given.

22        Plaintiffs also oppose the motion on the merits arguing that the officers ignored exculpatory

23  evidence from Plaintiff Kirby who Plaintiffs claim was openly living in the house and claimed to have

24  a lease and who were doing nothing criminal or suspicious.  Plaintiffs argue that there was no valid

25  consent as Taylor did not have the power to consent, since his lease did not begin until February 1.

26  ORDER - 6

1    Plaintiffs argue that Defendants could have sought a telephonic warrant and that there was no true

2    evidence of a burglary in progress.  Plaintiffs contend that the search of the house was unlawful

3    because it was ongoing for an hour.  Plaintiffs assert that the arrests were unlawful because once in

4    the house it was apparent that the occupants were not burglars, but people living in the house with

5    young women guests wearing prom dresses.  Plaintiffs make other contentions, as well, including the

6    treatment of the Plaintiffs after their arrests.

7            Plaintiffs' arguments are not persuasive.  There was sufficient information upon which the

8    officers reasonably relied in concluding that a burglary was in progress.  While Plaintiffs submit

9    evidence that the males had an argument with Taylor before the police arrived and that Taylor told

10   him that he was going to call the police, and despite knowing this, Zach Kirby had not collected any

11   documentation that they said would demonstrate that he had a right to occupy the premises.

12   Evidence offered by Plaintiffs that the police did not have until after the arrests is immaterial.  The

13   correspondence and checks between Gallagher's mother and the landlord were not in the officers'

14   possession at the time they responded to Taylor's burglary report, and the communications with

15   Gallagher's mother and the landlord did not occur until after the Plaintiffs had been transferred to

16   jail.

17           The officers acted reasonably seeking corroboration of Taylor's story.  Upon all the

18   information reasonably available to them at the time of the arrest, they could reasonably have

19   believed that the plaintiffs no longer had permission to be in the premises, and even if they were

20   mistaken in this belief, they still could have reasonably believed there was probable cause to arrest

21   Plaintiffs for burglary.  Taylor called for assistance, and confirmed in his declaration that he

22   consented to the officers' entry of the residence.  There was sufficient evidence for the officers to

23   believe that a burglary was in progress and that there were exigent circumstances for entry, as well.

24   Once inside the residence, the officers observed the crime of minors in possession of alcohol, and

25   they photographed the evidence before destroying it.  (Patrick Decl. Ex. B)

26   ORDER - 7

1   Ordering the Plaintiffs to the floor once the officers entered the residence cannot be

2   considered excessive to protect his own safety and to handcuff them.  Regarding telephone calls,

3   Plaintiff Kirby was allowed to call both Gallagher's mother and his brother-in-law without

4   interference while he was transported to the Lewis County Jail.  When Plaintiff J.A.T. indicated that

5   she needed to take her medication, he allowed her to take it at the Winlock Police Station a few

6   blocks from the house where she was arrested.  There is no evidence of deliberate indifference to a

7   serious medical need.

8                                              **CONCLUSION**

9        The qualified immunity defense provides protection to all but the plainly incompetent or those

10  who knowingly violate the law.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Plaintiffs have

11  presented no evidence arising to this level.  There are no genuine issues of material fact, and the

12  Winlock and Toledo Defendants are entitled to judgment as a matter of law.  The officers are entitled

13  to qualified immunity, and, consequently, the cities of Winlock and Toledo are entitled to judgment

14  as a matter of law as well.

15       NOW, THEREFORE, IT IS ORDERED: Motion of the Winlock and Toledo Defendants for

16  Summary Judgment [Dkt. # 35] is GRANTED and the Plaintiffs' claims against the Defendants City

17  of Winlock, Terry Williams, Bobby Munyan, Sam Patrick, City of Toledo, and Gerard Thurlow are

18  DISMISSED WITH PREJUDICE.

19

20       DATED this 9th day of February, 2006.

21

22                                              _____

23                                              FRANKLIN D. BURGESS
                                                UNITED STATES DISTRICT JUDGE

24

25

26  ORDER - 8